1-817-62 Jason Mount v. U.S. Department of Homeland Security Good morning, Your Honors. And if I could just have one minute of rebuttal, if necessary. You may. Your Honor, this case has some very key facts that pretty much are not in dispute. And this involves the e-mail that was used in this Merit Systems Protection Board case by another employee. And it's Brandon Hickey. And it's indisputable that Mr. Mount did give this e-mail to Mr. Hickey. And it's also indisputable that Mr. Hickey used this e-mail in his case. Also, as we point out in our brief on page 4, February 19th, around February 19th, 2015, Mr. Mount had a private meeting with Mr. Shea, the second-line supervisor, told him that Kurtz gave him the e-mail to give to Hickey, which he did. And at that point, after speaking with Mr. Mount, where Mr. Mount had voluntarily came to him, Mr. Shea asked him a number of questions and started to investigate whether he was truthful about knowing the contents of the e-mail. Now, the case law on page 10 of our brief, Mudd v. Department of Veteran Affairs, says the proper test for determining whether an employee had a reasonable belief that her disclosures were protected is whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions evidenced a violation of law, rule, or regulation. And our contention is, as Mr. Mount did exhaust, we say, in his OSC complaint, and he did bring before the judge on January 9th of 2018, that he told this whole story and that the question here is, should Shea have questioned Mr. Mount at all about this? And that's really what this case is about. Page 136 in the record, and I understand that the brief of the government does say that Mr. Mount wasn't actually investigated, it was only Mr. Kurtz, and Mr. Mount was a witness in that investigation, but we say the investigation occurred before. Those questions to Mr. Mount should never have been asked. Page 136 in the record, if Mount is only a witness for Mr. Kurtz in that investigation, why was Mount asked, did you know if Hickey used this email at his Merit Systems Protection Board case? Why would he be asked that? Do we want a system here where there's a litigation going on, there's a whistleblower litigation going on, and the supervisors find out about it, and they go ahead and they question how the person helped the whistleblower, and then to use that to undermine the guy's case, and then to say you really don't have a case because you admitted that you didn't even read the email at some point. And I do want to remind the court, I also want to address the argument that this argument was not raised below at the first level. There has never been a review of this judge's opinion. This judge came to an opinion, and his opinion basically was that he did not accept Mr. Mount's testimony. He didn't believe that he knowingly helped Mr. Hickey. And part of that analysis that the judge leaves out is, as we say on page 16 of our brief, what Mr. Hickey had said, and that Mr. Hickey had said that this is a situation where the email did help him in his case, and that basically the judge did not count that, and the judge did not count the circumstance in which Mr. Mount had answered those questions. The case law on the perceived whistleblower, I just want to go through some of the cases, and I think the King case is very persuasive because the King case says that it's a variety of fact patterns before the OSC that counts. And as I mentioned in my reply brief, there is no section on the OSC form that says, are you a perceived whistleblower? And therefore, what really the court should be looking to is what was before the OSC, and what did he say? What did the appellant say? And the appellant says two important things. He says, in January or February of 2015, Kurtz contacted Mount, informed him that the front office, which Mr. Mount understood to mean special agent in charge, Bruce Folkart, deputy special agent in charge, Michael Shea, were not happy about the email, and they were upset, and they called into question ASAC Hunt's integrity, and that's because this email was used at the deposition in the case. And it goes on, and Mount's OSC complaint goes further than that, and says that Mount described to the OSC the dialogue between him and Shea, in which Shea pressed him on whether or not he read the email. And Mount writes that during the meeting, ASAC Shea stated he was disappointed in Mr. Mount and accused him of lying to him, and said, you didn't tell me you read the email. Again, he goes through the whole thing before the OSC. And the judge is supposed to go ahead and take the facts, and the judge is supposed to see what facts, whether he's perceived whistleblower or not, is not fact. It's not a fact argument. For example, in the Aubrey L. case, what the AJ does there is the AJ takes the facts, and the AJ says, okay, Mr. Appellant, you've pled, you know, in that case it was misuse of a travel card, and the failure of reimbursement of claims is your disclosure. Okay. Hang on a second. So he didn't raise this perceived whistleblower argument in his complaint. Are you saying that the administrative adjudicators, even though he didn't specifically mention it, should have understood that that's what he was trying to say? I'm saying, Your Honor, that there's a fact pattern, and the fact pattern can be read in that way. And since I'm a form... Even though he didn't ask them to read it that way, you're saying they should have known that that's what he was talking about? Right. Because there's the case law that says that the AJ is supposed to read these in an expansive way, supposed to give the person the opportunity. So now it could be that the AJ finds at the end of the day that he wasn't a perceived whistleblower, which I think he was. But the AJ here doesn't even do that analysis. The AJ pretty much says, because you did not specifically state the words perceived whistleblower, treat me as a perceived whistleblower, you cannot raise that issue above. And as I've said in my reply brief... When you say the AJ and above, I think it's important you be precise so we know what we're talking about. As I understand it, there's an OSC. You actually file the complaint with OSC. Yes, you do, Your Honor. And OSC is an investigatory... has an investigatory function. Right. So you go in and you give them the facts, and they do some investigation. They could take up the mantle themselves as a result of the conclusion they reach in their investigation. Absolutely. And then after that, after you've gone to OSC, if OSC thinks you haven't done anything, you then go to the board. That's correct. What OSC can actually do is if the OSC concludes that the case is, I guess, worthy for them, is they then prosecute the case. Right. Right. And so when you're talking about raising things, you raised this legal theory at the board level. Yes, we did. But the board said that you didn't raise the legal theory in what you said to the OSC. That's correct. And so the issue for us is, is communicating to the OSC all the facts that would be necessary for OSC to reach a legal conclusion sufficient, or do you also have to give the legal conclusion, state it as your theory? That is what is before this court. And none of the cases cited by the government say that if you do not tell the OSC, specifically, I am a perceived whistleblower, that person loses. They cite two cases. One is the Navy case where the OSC took the case, and the OSC does say the words perceived whistleblower. But you can't infer from that that just because somebody didn't say that, that doesn't mean that they didn't present a fact pattern which would enable the OSC, as per the McCarthy case, to investigate what this is, what happened. And the OSC, on its own, can reach a conclusion, you were a perceived whistleblower, you weren't. But the conclusion by the OSC doesn't really take away from what that fact pattern was. And what I was alluding before in Al... Well, I'm sorry, in his complaint, did he specifically argue whistleblower or assist? In his OSC complaint? Yes. Did he allege himself to be either a whistleblower or an assister? I think he does. I think he does. But understand this, understand this, Judge Thompson. I'm just trying to finish. Sure. He argues two, but doesn't argue the perceived. He does not say, and I do concede, Judge Thompson, he does not say to the OSC, I am also a perceived whistleblower. I thought you were arguing that in your complaint, you put all the allegations that would lead someone to conclude that you were alleging perceived assistant claim. Yes. Yes, I'm 215 in the joint appendix. And you say that's enough to save you. I do. I do. And I think that the case is one where, if we really think about it, what happened here is the supervisor asking the guy, pressing the guy, you read the email, you didn't read the email, you should have read the email, you shouldn't have. It's undisputed the supervisor knew it was used in the underlying litigation of the first employee. That's just undisputed. If I understand your theory, your response to Judge Thompson seems not to have gone quite far enough. As I understand your theory, he didn't even have to say, I'm proceeding under an assisted whistleblower theory. He just had to go to OSC and say, I helped or was perceived as helping, or I brought this message to this fellow who was a whistleblower, and I got fired because I brought the message to him. Exactly, Judge. And then it's up to OSC to investigate those facts and decide what legal label to put on it. Exactly. Exactly. And whether in his attachment where he lays out all the facts, and then he says, I was retaliated against because I blew the whistle or whatever, he doesn't even have to say that. And certainly the argument would not be if he didn't say that, if the person gave no conclusion, why do you think you were retaliated against, nobody here would say he didn't exhaust with the OSC. Whatever he puts down is really just gravy. The facts, the fact pattern, as the cases repeatedly show in L, King, Ellison, that the question is, would that fact pattern have allowed the OSC to investigate? And nothing further. Thank you. Mr. Kitchener, good morning. Good morning, Your Honor. May it please the court. I think the essential mistake here is in understanding what is a perceived whistleblower claim. These claims have in common an allegation that the person who is retaliating actually has a mistaken belief in some respect. Usually it's a case of mistaken identity. And, for example, if this case was referred to special counsel versus the Department of the Navy, in that case, that's a perceived whistleblower case. And it's a perceived whistleblower case precisely because there's a mistaken belief. The person who is alleged to have retaliated believes by mistake that the appellant has made a disclosure that comes within the scope of the act, when actually the appellant is not the person who made the disclosure. It was somebody else. And then, for example, in the case Price versus NASA, that's another case of mistaken identity. There the person who is alleged to have retaliated believes by mistake, it's alleged, that the appellant has initiated an audit by the Office of Inspector General. But, in fact, that appellant did not initiate the audit. Well, isn't he arguing that he perceived him to minimally be an assister? And then the question becomes, what is an assister within the scope of 2302B9? Answer that first question. That leads to the next question, but isn't his argument that he was perceived to be an assister regardless of what assister means? To answer your earlier question, there would be two types of claims. For example, the assister claim would be asserting that I, the appellant, in fact did provide assistance that satisfies the requirements of the act, meaning it would have to be more than carrying a document, as the board said in this case. Now, a perceived assister claim would be, it's a different claim. It's a claim that the person who is alleged to have retaliated believes that the appellant has done something that comes within the scope of the act. For example, you believe that the appellant has given testimony, when in fact he didn't give testimony. Or you believe that he filed a complaint himself or gave an interview to the Office of Inspector General. You would have to mistakenly believe that the appellant did something that he did not do. That's your first argument, that you still didn't answer whether there's a perception of not being the actual whistleblower, but the perception of assisting the whistleblower. But it would have to be assistance with the scope of the act. It would not be enough to believe that someone has delivered the document. Because just delivering the document pursuant to your supervisor's orders would not come within the scope of 2302B9. So that's why I'm specifying what assistance consists of here. And if you believe that someone delivered the document, as Shay testified, he believed that Mark delivered the document. Everybody believed that Mark delivered the document. That's not a mistaken belief. That's just a belief as to what occurred, and it's not sufficient to state a perceived assister claim. It only states, it brings to OSC's attention whether or not you're an actual assister. Go ahead. Your opponent, as I understand claims, that the underlying facts for his assisted claim are the same as those for his perceived assisted claim. What do you say to that? No, they're not the same. In order to state a perceived assister claim, you would need additional, they're actually fundamentally different claims. One way to understand it very easily. He's not saying that the claims are not different. He's saying that the facts to prove one are the same as the other one. As I understand his allegation in the brief. I would agree that he's trying to make two claims the same through his brief, but actually they're two different claims. Just tell me what facts would be different. You'd have to be alleging that, for example, Shay, who was the deputy, that he had a belief that Mott had done something more than what he did in this case. And what was brought to the attention of the Office of Inspector General is that Mott made a delivery of the document pursuant to the supervisor's instructions. And that's on page 214. But that's skirting the argument. It isn't his argument that Shay actually believed that Mott did more than using the record supports he did. It's his belief in what Mott did, not what Mott actually did. I would agree. I would ask the court to look at page, referring to the complaint again, 215 of the complaint. In other words, if Shay thought that Mott was part and parcel of the whole whistleblowing incident, that he wasn't just a courier, but if Shay thought that Mott was doing a clandestine intentional delivery to the whistleblower, I think that's what his argument is, that Shay thought that that was what was going on and accordingly took this action against him because of that belief. Not that Mott actually, because according to his own testimony, he didn't want anything to do with any of this, right? Yes, Your Honor. But what I would ask Your Honor to look at is the complaint, page 215, the actual complaint. And there Mott is relating a conversation that he had with Shay. And he's relating this conversation with Shay. And, quote, Mott went on to state that the statement made by Kurtz, that it was Mott's decision to give the email to Hickey, was not true. And it was always Kurtz's intention that Mott give the email to Hickey on Kurtz's behalf. Shay stated he had heard this. Mott stated he wished to clear the air and went on to state how the email was given to him. Mott asked if he should speak to the special agent in charge to give him his version of events. Shay stated he appreciated Mott speaking to him regarding this matter and he would clear things up with Foucault, the special agent in charge. Now, those assertions of Mott to the office of Inspector General are inconsistent with the contention now being made in court that Shay believes that Mott did something different. Rather, the implication of these statements from the complaint is that Shay believes what Mott told him. And what Mott told him was he did this pursuant to his supervisor's instructions. And that is, according to the complaint, what Shay believed. Can we try simplifying this some? If I just go to OSC and say there's this whistleblower. I delivered an email to him. I was doing great at work until I delivered that email. And then right after the bosses found out I delivered the email, I got bad readings. Period. Isn't that enough if you go to OSC? I mean, you're talking about employees who are not lawyers. If an employee goes to OSC and relates what I just related, then doesn't OSC have enough of what we in Thornton call a factual basis for the complaint? Doesn't OSC have enough to do an investigation to see whether those bad reviews that he received after delivering the email were because they thought he was assisting, he was assisting, or whatever? Well, in the hypothetical you gave, it doesn't include a further allegation that the people became aware of this and that they believed that he was assisting. You've just, that's not in there. Well, let me follow that up because it seems to me it's conceded that what he did convey was enough to precipitate an investigation into whether he was assisting. No, no. They didn't say that he believed that by not preserving it. There was no exhaustion ruling on his assisting claim. Correct. He contends that by delivering the document that... I'm talking about, didn't the board either rule or implicitly accept the proposition that he exhausted his assisting claim? Yes, there were two separate claims. And the board found that the first claim, the assisting claim, was exhausted at the Office of Special Counseling. And isn't an assisting claim exactly like a perceived assisting claim except it's minus, it's got one additional fact. The assisting claim has the additional fact that you were assisting whereas the perceived assisting claim you don't even need to prove that you were assisting. So the perceived assisting claim seems to be a lesser included subset of an assisting claim and if you exhausted the assisting claim, by definition you would exhaust the perceived assisting claim. No, because I would ask the court to look at the Federal Circuit's decision in Ward. And what the Federal Circuit says there is you have to bring the precise claim. When did they say that in the law? Excuse me? Did the law require precise? Was the law used precise or is that something that was added to by the Federal Circuit? Well, what the Federal Circuit explains is that the way this whole system works is the Office of Inspector General has to investigate the precise claim. And if they do an investigation and they conclude that it's likely there was a violation, what they will then do is go to the agency head and trigger an additional investigation by the agency in an agency report. In order for the Office of Special Counsel to carry out this role of doing the investigation and then triggering an investigation by the agency and an agency report, and all this happens before the board takes on the case, in order for that to happen, the precise claim of retaliation has to be brought to the Office of Special Counsel. This sounds like 19th century pleading requirements, where we're talking about employees going to specialized lawyers whose function is to investigate wrongdoing in the agency. And it seems to me that you're saying they have to come up with the magic words, that if they just go in and give the short factual scenario that gets the ball rolling and has what we, in our Title VII opinion, call the factual basis for the case, that's enough. We never used the word precise or said you had to name the theory. So how do you, should we not follow our Title VII jurisprudence on this point? It's going to take a few minutes for me to answer this. But first of all, we're not contending that there has to be a precise label. We're contending that precise allegations have to be presented. And what we're contending is that there's a real difference between the two claims here. An actual assister claim is saying I took actions that satisfy the requirements of the act. But it also has another element. That other element is the boss who took the negative employment action knew I did that, believed I did it. Correct. That's an element of the claim that you said he exhausted. Right. But that same element is the other claim. The other claim, the perceived assister claim is, and this is what the OFC would investigate, the Office of Special Counsel would not be investigating whether you made a complaint to, for example, the Office of Inspector General. They wouldn't be going down that street. Their investigation would be fundamentally different. They would be asking the agency and agency employees, what did you perceive? Did you perceive something that really did not occur? Well, let's put a sharp point on this, all right? Suppose he came in and said they retaliated against me because I was a whistleblower or I assisted a whistleblower. And so OFC goes, we're going to investigate that. He didn't say anything about perceived or anything like that, so we're just going to investigate whether that was done. We go to his boss, and the boss says, I've done well retaliating against him because he was assisting the whistleblower. But OFC finds out he wasn't assisting the whistleblower. So OFC says, oh, your assisting claim fails, and you didn't precisely mention this other theory of perceived, so we're closing the investigation. Even though they've got an admission from the employer that he retaliated because he perceived it. It just seems so artificial. Your Honor, the best answer to that is that's not what OFC would do. In that case, the facts that you present, OFC would give information then to the agency and say, in this particular investigation, this is what we uncovered, and it looks like a likely violation of the act, and therefore the agency now, you should either do your own investigation and report back to us, maybe take corrective action, or perhaps the Office of Special Counsel would bring the lawsuit themselves. But I think you gave a hypothetical where OFC did uncover something different than was fed to them. And they will react to it. What we're saying here is, based on Federal Circuit precedent, you have to give the Office of Special Counsel enough factual allegations so they know which street to go down. I think I ran over you, Your Honor. I apologize. It's too bad because I had a good question. Go ahead, sit down. Your Honor, just two points in rebuttal. One, I do want to distinguish the Ward case. The Ward case pertained to an additional charge about a doctor who took excessive overseas trips. And the court, the Federal Circuit, said the failure to raise that issue with the OSC, in other words, the issue that must be exhausted are the facts, the actual, you never claimed that one of your disclosures was the doctor taking overseas trips, not a legal theory. And I think that if what my adversary was saying was true, that you have to have the precise claim, like the 19th century pleading, there would certainly be on the OSC form itself, there would be the very question, are you a perceived whistleblower? I think there may, if I'm understanding it, there may have been another argument that counsel was putting forward for the Board, which is that if we look at page 215, I assume, of the appendix, we'll find some affirmative representation by your counsel to, by your client OSC, that somehow necessarily precludes there from being a perceived assisting claim. The point is, even if he says at the end, which he does, you know, I think the paragraph is something like, I was retaliated because, you know, I did this, okay. He doesn't even have to say that. He doesn't have to say that. All he has to do is set forth the facts, and as your Honor pointed out in the questioning my adversary, that that already includes another element, and it already includes all the elements of perceived. The reason this case is, this is perceived, this is not just the carrier, where this guy is not just the FedEx guy, is because if he was, why in the world would the supervisor ask him, did you read the e-mail? It's only because, meaning the assignment, he's not in trouble for reading the e-mail, and he shouldn't have, and just, wow, you know, this was a confidential thing, and you breached that confidentiality. That's not the claim. He was never cited for that. He's asking him that because he's treating him as though he was the assister, and that's it. Thank you. Thank you. We'll have a very short break. All rise. Thank you.